## Case No. 236.

### ALLEN et al. v. SCHUCHARDT et al.

[1 Amer. Law Reg. (N. S.) 13, (1861.)]

Circuit Court, S. D. New York.[1]

SALE—STATUTE OF FRAUDS—LEX LOCI CONTRACTUS—PLEADING—IMPLIED WARRANTY—AGENCY.

1. S., acting for parties at Amsterdam, put into the hands of a broker in the city of New York a sample bottle of a quantity of madder, to negotiate a sale. The sale was made in Rhode Island, by the broker, in the name of S., the foreign principal not being disclosed, under an oral contract to A., upon the inspection of the sample bottle, which he refused to open on account of the instructions of S. The madder was at the time of the sale, in barrels, in a vessel at the port of New York. After the contract was made, a bill of goods was furnished to the purchasers, with a clause, that "no claims for deficiencies shall be allowed unless made within seven days from receipt of goods." The madder in the casks proving inferior to its apparent qualities in the bottle, an action on the case was brought against S., by the purchasers, for damages. Held, the oral contract made in Rhode Island, where the statute of frauds does not prevail, can be enforced here, although the contract, if made in the same manner in New York, would have been void. The fact that the merchandise was in New York does not affect the question.

[Distinguished in The Avon, Case No. 680.]

[1] Affirmed by supreme court in Schuchardt v. Allen, 1 Wall. (68 U. S.) 359.]

2. The action on the case is a proper remedy, and it is not necessary to aver a scienter.
[See note at end of case.]

3. The sale was by sample, and there was an implied warranty that the merchandise should correspond with the apparent qualities of the sample.
[See note at end of case.]

4. The clause in the bill of goods respecting deficiencies, is inoperative, as the contract was previously complete.

5. S., not having disclosed his principals, is personally liable.

At law. [Action by Phillip Allen and others against F. Schuchardt and others for damages for breach of warranty. Judgment for plaintiffs.]

The sample of a quantity of madder was put into the hands of a broker in the city of New York, by the defendants, to make sale of it for them. A sale was made accordingly to the plaintiffs, in the state of Rhode Island, upon an inspection of the sample bottle, which the broker refused to open on account of instructions from his principals. The sample bottle had been forwarded from Amsterdam to the defendants, previous to the shipment of the bulk, and was the only sample of the goods, as none accompanied them. The madder was in barrels, in the vessel, which had arrived in New York, about the time of the sale. The sale was made in the name of the defendants, their principals not being disclosed.

Before NELSON, Circuit Justice, and SHIPMAN, District Judge.

NELSON, Circuit Justice. I. The contract of sale in this case was made in Rhode Island, and, though verbal, is there valid, as no sale note is required, as in our statute of frauds. The madder, the subject of the sale, being in New York, or elsewhere, at the time, does not affect this question.

II. The action on the case for a false warranty, is certainly a somewhat antiquated remedy, the action of assumpsit having taken its place; yet we cannot say that it has been abolished or modified on account of the substitution, by the profession, of the new remedy. There are certain advantages to be gained by the adoption of the one or the other, which are not common to both, and, in a count upon a false warranty, the pleader need not aver the scienter any more than in that of assumpsit. 1 Wheat. Selw. N. P. p. 486; [Williamson v. Allison.] 2 East, 446; 2 Chit. Pl. p. 101, note pp. 276, 277; 1 Chit. Pl. 139.

III. The sale of the madder was a sale by sample, where the purchaser had no opportunity to examine the bulk; and where he was prohibited by the vendors from opening the sample bottle for the purpose of examining the article, by which act we are inclined to think they assumed the responsibility of maintaining that the bulk was equal to the quality of the article as it appeared to the eye in the bottle. The sale was not only

by sample, but was obviously intended to be such by the vendors, as the sample of the madder preceded the arrival of the bulk from abroad, and no sample accompanied it. The sample thus previously forwarded was· put into the hands of the broker to sell the one hundred barrels subsequently shipped. This sample thus forwarded was the only one furnished representing this quantity of madder.

IV. The sale being a sale by sample, there was an implied warranty that the bulk was equal to the sample in quality, which, upon the evidence in the case, it clearly was not. All agree that, from an inspection of the sample, the madder appeared to be pure and unadulterated. From a careful analysis of the bulk by chemists. there was an adulteration. by sand and other foreign substances, exceeding thirty per cent. This evidence preponderates over the weight of the testimony abroad, taken on commission. There was no analysis of the article abroad.

V. The note at the head of the bill of goods rendered "no claims for deficiencies or imperfections allowed, unless made within seven days from receipt of goods," was not binding upon the purchasers. The contract was complete and binding upon both parties before this bill was delivered. The case is an unfortunate one, as both parties are innocent. the fraud having been perpetrated abroad before the goods were shipped to the defendants, who were mere consignees. The question is, which of these innocent parties, under the facts disclosed, should suffer the loss? The question turns upon a dry rule of law. and, according to my idea of it, the plaintiffs are entitled to the judgment.

The·· verdict of $10,000 was taken by consent. subject to adjustment and the opinion of the court upon a case .made. I shall deduct thirty per cent. from the price paid for the madder, as furnishing the amount of damages in the case, and give judgment for plaintiff for that sum.

NOTE. [from original report.] The familiar principle in this class of cases is, "that so much of the law as affects the rights and merits of the contract. is adopted from the foreign country; so much of the law as affects the remedy only, is taken from the local law of the country where the action is brought." Does the statute of frauds affect the contract or the remedy? It has been held in England. after an extended and elaborate discussion, that the fourth section of the statute affects the remedy. and consequently that an oral agreement within that section, made in France, and valid there, cannot be enforced in England. Leroux v. Brown, (1852,) 12 C. B. 801, 14 Eng. Law & Eq. 247. The court rests its decision upon the special language of that section: "No action shall be brought upon any agreement which is not to be performed within a year, &c., unless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing," &c. The construction placed upon this language was, that the words, "no action shall be brought," evidently regarded the remedy, and the alternative clause showed that the writing was required only for the purposes of evidence. There were dicta to the effect that such a construction would not be given to

the seventeenth section, regarding sales of goods. These dicta were followed in 1855, by the supreme court of Missouri, in Houghtaling v. Ball, 20 Mo. 563. The court expressly decides that an oral contract for the sale of goods, made in a state where the statute of frauds does not prevail, can be enforced in Missouri, where the statute exists substantially in the language of the English seventeenth section. Browne, in his work on the Statute of Frauds, (Ed. 1857,)·p. 140, note 5, disapproves of the distinction, citing dicta in Carrington v. Roots, 2 Mees. & W. 248; Reade v. Lamb, 6 Welsby, H. & G. 130. The Missouri case, however, was not before him, and the principal case is in the same direction. There is no distinction in the present New York statute of frauds, between the two classes of subjects, and the decision would embrace all the sections. In Dacosta v. Davis, 4 Zab. [24 N. J. Law,] 319, the authorities are collected in reference to the question whether the absence of the goods affects the law of the place of contract. In this case a contract was made in New Jersey, for the sale of goods at the time in Pennsylvania. The court arrived at the conclusions reached in the present case.

(2.) The old rule was that all actions upon a warranty, whether express or implied, were actions on the case. As to implied warranties, see Keilw. 91. Lord Ellenborough, in the case of Williamson v. Allison, 2 East, 446, (1802,) says, that the form of declaring in assumpsit cases of warranty, had not then prevailed above forty years, and was adopted in order to add the money counts to the declaration. The right to declare in assumpsit on an express warranty, was first decided in [Stuart v. Wilkins.] 1 Doug. 18, (1778.) The distinction as to the necessity of alleging a scienter is that if the action is on a warranty, it is not necessary, but if it be in the nature of an action of deceit, without any warranty, scienter must be alleged and proved. Note to Williamson v. Allison, supra; Stone v. Denny, 4 Metc. [Mass.] 151; [Freeman v. Baker,] 5 Barn. & Adol. 797; Bayard v. Malcolm, 1 Johns. 453. The right to bring an action on the case, for breach of warranty, is fully recognised in this country, among other cases, in [Hillman v. Wilcox,] 30 Me. 170; [Beeman v. Buck,] 3 Vt. 53; [Bartholomew v. Bushnell,] 20 Conn. 271; [House v. Fort,] 4 Blackf. 293. An important advantage may sometimes be secured in joining a count for fraudulent misrepresentation with the count on an express warranty, and a recovery thus may be had in accordance with the evidence. A judgment will, it seems, be a bar to an action of assumpsit on the warranty. [Salem India Rubber Co. v. Adams,] 23 Pick. 256.

(3.) In determining whether a sale is by sample or not, a material inquiry is, whether the article is open for inspection. It is a reasonable rule, where it is not present and a sample is exhibited, that the sale should be treated as being by sample. The correspondence of the sample with the article, is the essence of the contract, and the purchaser may say, if this correspondence does not exist, "non in haec foedera veni." Boorman v. Jenkins, 12 Wend. 576; Salisbury v. Stainer, 19 Wend. 159; 1 Smith, Lead. Cas. 77; note to Chandelor v. Lopus. This principle is in like manner true of a written contract for articles of a particular name not open to inspection: Wieler v. Schilizzi, 17 C. B. 619. When the article and sample are both open to the purchaser, the same principle does not necessarily prevail. There must be an agreement to sell by sample, or at least an understanding of the parties that the sale is to be a sale by sample: Waring v. Mason, 18 Wend. 434. The question can only be answered by a view of all the circumstances of each case, and the intention of the parties must be gathered from their acts. It is a question of intention, and must be submitted to the jury. The evidence must be sufficient, from which the

jury can find that the sale was intended to be a sale by sample. Beirne v. Dord, 1 Seld. [5 N. Y.] 95; Hargous v. Stone, Id. 73. An exhibition of a sample in such case, without anything more, is only a representation that it has been taken fairly from the bulk of the commodity: Id. In case of a technical sale by sample, if the article is not equal to the sample, the contract may be rescinded or the merchandise may be retained and an action for damages be brought. 2 Kent. Comm. 481; Story, Cont. § 540; authorities collected by Jewett, J. 1 Seld. [5 N. Y.] 99. The question decided in this case, that the merchandise must, under the facts proved, correspond with the appearance of the sample, and not simply with its real qualities, is of the first impression. The vendor may be regarded as estopped from denying that the apparent and actual qualities of the goods were different.

(4.) The defendants were liable, not having disclosed their correspondents, on well settled principles of law. If they had disclosed their principals, the question would have been raised, whether, as foreign factors, the presumption of law is that the dealing was exclusively with them. This doctrine, which was advanced by Judge Story, (Ag. § 268, and note 290. 423,) was combated, 2 Kent. Comm. 630, 631; [Kirkpatrick v. Stainer,] 22 Wend. 244; disapproved and discarded in Green v. Kopke, (1856,) 18 C. B. 549, and in Oelricks v. Ford, (1859,) 23 How. [64 U. S.] 49, Nelson, J., delivering the opinion of the court. The question is one of intention, to be gathered from surrounding circumstances, such as usage, &c. The fact that the principals were foreigners, might be an element in reaching the conclusion. Jervis, C. J., in Green v. Kopke; Coleridge, J., in Mahony v. Kekule. [Lennard v. Robinson,] 5 El. & Bl. 125, 130. See Heald v. Kenworthy, 10 Exch. 739. "The question is one of fact and not of law," Parke, B. The doctrine itself was only extended to goods sold by oral contract. Bray v. Kettell, (1861,) 1 Allen, 80, per Bigelow, C. J. Where there is a written contract, properly executed by an agent, as if signed "A. B., principal, by C. D., agent," and the language is unambiguous, a foreign factor is no more liable than a domestic factor. S. C.

[NOTE. This judgment was affirmed by the supreme court in Schuchardt v. Allens, 1 Wall. (68 U. S.) 359. Mr. Justice Swayne, in delivering the opinion, said: "The ancient remedy for a false warranty was an action on the case sounding in tort. Stuart v. Wilkins, 1 Doug. 18; Williamson v. Allison, 2 East, 447. The remedy by assumpsit is comparatively of modern introduction. In Williamson v. Allison, Lord Ellenborough said it had 'not prevailed generally above forty years.' In Stuart v. Wilkins, Lord Mansfield regarded it as a novelty, and hesitated to give it the sanction of his authority. It is now well settled, both in English and American jurisprudence, that either mode of procedure may be adopted. Whether the declaration be in assumpsit or tort, it need not aver a scienter; and, if the averment be made, it need not be approved. * * * One of the considerations which led to the practice of declaring in assumpsit was that the money counts might be added to the special counts upon the warranty. Williamson v. Allison, 2 East. 447. If the declaration be in tort, counts for deceit may be added to the special counts, and a recovery may be had for the false warranty or for the deceit, according to the proof. Either will sustain the action. * * * At the time of the sale the agent produced a sample bottle. There was but one for the one hundred casks of madder. It was usual to have one for each cask. The broker was instructed by his principals not to allow the bottle to be opened, because the contact of the atmosphere would injure the appearance of the sample which it contained. and he acted accordingly. The arrival of the sample preceded the arrival of the casks from abroad. The sale was to be made, and was in fact made, by that sample. The agent says in his testimony: 'The sample was very handsome to look at.' 'The conversation carried the idea that it was very handsome madder.' There was no sand in the bottle. The sale was made at Providence, Rhode Island. The casks were at that time in New York. and, it seems from the evidence, still on shipboard. The plaintiffs had no opportunity to examine their contents. The transaction was a large one. The vendees had no means of forming a judgment of the quality of the madder in the casks but from the appearance of that in the bottle, which they were not allowed to open. From these facts we think the jury were well warranted in drawing the inference that it was the understanding of the vendees that they were buying under a warranty that the quality of the madder in the casks was equal to that of the sample in the bottle, and that the agent of the vendors intended to be understood as giving such a warranty. It is hardly credible, in the presence of such facts, that the understanding and intention of the parties could have been otherwise. But· it is not necessary that the state of the evidence should have been such as necessarily to lead to this conclusion. It is enough that there was evidence upon the subject proper to be left to the consideration of the jury. If the jury erred, the remedy was by a motion for a new trial, and not by a writ of error. This part of the case was argued as if such a motion were before us. The rules of law which would be applicable in that event are very different from those which apply as the case is presented. A motion for a new trial in the courts of the United States is addressed to the sound discretion of the tribunal which tried the case, and to grant or refuse it cannot be made the subject of exception. Brown v. Clarke, 4 How. (45 U. S.) 15. Here the question is whether the court erred in refusing to take the case from the jury. Upon that subject we concur in the opinion of the learned judge who tried the cause. If a motion for a new trial were before us. we should overrule it. In our opinion, right and justice have been done."]