FANNIE ROOSEVELT, Appellant, *against* LOUIS DREYER, Respondent.

(Decided March 14th, 1884.)

After the enactment of the law of 1883 concerning pawnbrokers (L. 1883, c. 339), which required every pawnbroker to deliver to the person pawn-ing any goods, &c., a memorandum or note containing the substance of the entry to be made in his book, also required by the act, defendant, a pawnbroker, upon making a loan on pawn of an article belonging to plaintiff, gave a memorandum or certificate which did not comply with the law, and which showed upon its face that the loan was usurious. In

an action brought by plaintiff to recover from defendant the value of the property : *Held*, that oral evidence of an agreement made at the time of the loan that only legal interest was to be charged, was admissible on behalf of the defendant, since the statute did not declare that no loan should be valid unless the memorandum or note required was given, or otherwise make it the only evidence of the loan, and the rule excluding parol evidence varying a writing did not apply, the memorandum not being a valid instrument ; but that the evidence introduced for that purpose was insufficient to sustain a judgment in his favor, the explanation given being unsatisfactory, and not corroborated by the production of the contemporaneous entry in his book required by the statute, and in some points contradicted by testimony of other witnesses.

APPEAL from the judgment of a district court in the City of New York.

The facts are stated in the opinion.

*A. Kling*, for appellant.

*H. Joseph*, for respondent.

CHARLES P. DALY, Chief Justice.—This is an action to recover from the defendant, who is a pawnbroker, the value of an article of apparel called a dolman, on which he had advanced the sum of $145, upon, as alleged by the plaintiff, a usurious agreement to receive for the loan interest at the rate of 25 per cent. per annum, the statute allowing pawnbrokers to charge upon loans over $100 but 18 per cent. It is provided by the general act respecting pawnbrokers (L. 1883 c. 339 p. 508), among other things (§ 4), that every pawnbroker shall keep a book in which shall be fairly written, at the time of the loan, an account of the goods and things pledged, the amount of money loaned thereon, the time of pledging the same, the rate of interest to be paid on the loan, and the name and residence of the person pledging, and that he shall, at the time of the loan, deliver to the person pledging, &c., a memorandum or note signed by him, containing the substance of the entries required to be made by him in his book. This act further provides that no pawnbroker shall ask or receive a greater rate of interest

than 36 per cent. per annum upon any loan not exceeding $100, or 18 per cent. upon loans exceeding that amount. The act was passed the 30th of April, 1883, and as the loan was made on the 13th of June, 1883, the defendant was bound to comply with the provision of the act.

The article pawned belonged to the plaintiff, and was pledged in her name by a Mrs. Richards, to enable the plaintiff, as Mrs. Richards testified, to pay money due by the plaintiff to her. At the time of the loan a certificate or memorandum, partly printed and partly written, was given by the defendant to Mrs. Richards, containing the date of the loan, a description of the article, the names of the defendant and the plaintiff, the amount of the loan—$145—and a statement that that amount was loaned for one year at 25 per cent. per annum, and that $2 was to be charged for the safe keeping of the article. This certificate was not signed by the pawnbroker, as the statute requires. The defendant's name, "L. Dreyer," was merely printed at the head of it, with 85 Division Street beneath it; the surname only of the party pledging (the plaintiff) was given, her residence was not specified, as the law requires, and the rate of interest was stated to be 25 per cent. per annum.

The certificate or memorandum, therefore, not only failed to comply with the law, but it showed, upon its face, from the rate of interest charged, that the transaction was usurious.

The testimony produced by the plaintiff was to the effect that she, and a person sent with her by her lawyer, demanded the article of the defendant, tendering him the amount advanced—$145, with 18 per cent. interest, but that the defendant refused to deliver it, demanding 30 per cent., and $2 for taking care of the article, which demand and tender the defendant denied. He denied, also, having demanded 30 per cent. He testified that after the article was shown, he told the plaintiff that Mrs. Richards said she would pay $2 for extra care in keeping it (the article being a fur sack, or cloak), but that if the plaintiff was not willing to pay the $2 when she came to take the article out, he

would drop the $2, and that the gentleman with her said that the plaintiff and her husband would call the next day, when they left without tendering or offering any money.

As the certificate showed upon its face that the contract was usurious, the defendant introduced oral testimony to show that the understanding was, at the time of the loan and the giving of the certificate, that legal interest only was to be charged ; that the old printed certificate had been used because the defendant had not yet got a new one printed, in conformity with the recently enacted statute ; that Mrs. Richards asked him upon receiving the certificate whether he meant to charge 25 per cent., and he told her that he charged the legal interest ; that he could not get the certificates printed for each pledge ; that the one given was an old ticket; and that, when she came to take out the article, there would be no difficulty about the interest ; which statement Mrs. Richards, who was examined as a witness, corroborated. This testimony was objected to by the plaintiff, on the ground that, the contract being in writing, oral testimony could not be given to show that the rate of interest was different from the amount stated in the printed and written memorandum or certificate ; that the statute made the memorandum required by it the written evidence of the contract, and that oral evidence should not be allowed to vary or alter it.

The statute does not declare that no loan by a pawnbroker shall be valid, unless the memorandum or note is given provided for by the fourth section. The plaintiff argues that the note or memorandum in writing required by the statute is analogous in its effect to the provision of the Statute of Frauds, requiring a note or memorandum ; but the Statute of Frauds declares that the agreement or contract shall be void, without the note or memorandum ; and there is no such provision in this statute. The eleventh section provides that the mayor shall have full power and authority to impose fines and penalties of not less than $25 nor more than $100 upon persons offending against any of the previous provisions of the act, and to suspend his or

her license until the fine is paid, and the incurring of this penalty appears to be the only effect of omitting to give a certificate containing the details required by the statute. We would not consequently be warranted in holding that the only evidence that can be given of the contract is the memorandum provided for by the statute. Nor was oral evidence of the understanding between the parties, at the time of the loan, that it was the legal rate of interest that was to be charged, and not the 25 per cent. printed upon the certificate, any violation of the rule that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a written instrument. That rule applies only in the case of a valid written instrument. It assumes that the instrument has a legal existence and is valid; that the verbal contract has been merged in a valid written one, for, as it has been said, it is in virtue of its *superior obligation* that a written contract has the effect of extinguishing the verbal contract upon which it is founded; and of course, where it has no obligation whatever, it can have no such effect (Cowen & Hill's Notes to Phillipps' Evidence, Part II. 603, 612, notes 295 and 304, and the cases there cited; Story on Contracts, § 669; 1 Greenleaf on Evidence, § 275; *Lear* v. *Yarnel*, 3 Marsh. [Ky.] 421; *Boorman* v. *Jenkins*, 12 Wend. 573).

This was the case here. The written instrument imposed no obligation, for it was absolutely void. It was competent therefore for the defendant to show by oral testimony that the $145 was loaned on the dolman at the legal rate of interest; that that was the understanding between Mrs. Richards and himself when the memorandum or certificate was given to her, and to explain how it was that a certificate was given with 25 per cent. printed upon it, instead of 18 per cent. Even where a contract was usurious in its inception it is competent to show that the parties by a subsequent agreement changed it into a valid contract at the legal rate of interest (*De Wolf* v. *Johnson*, 10 Wheat. 367; *Barnes* v. *Hedley*, 2 Taunt. 184; *Wright* v. *Wheeler*, 1 Camp. 165, note).

Roosevelt *v.* Dreyer.

I think, however, that this judgment should be reversed on the insufficiency of the evidence given by the defendant to overcome the effect of what was contained in the written and printed memorandum. The explanation he gave was suspicious, and called for the production to substantiate it of contemporaneous evidence, which was in his possession, and which should have been produced; that is, his book, in which, by the statute, he is required to enter the details that he is also required substantially to embody in the memorandum or note to be given to the person pledging. If the rate of interest as given in the book was 18 per cent., which was the lawful rate, it is singular that the book was not at least offered as a contemporaneous record in writing, corroborating the oral testimony. The entry there may have been the same as in the memorandum; and if such was the fact, very little weight could be given to the explanation he offered.

The explanation was not, upon its face, satisfactory. A month and a half had elapsed since the enactment of the statute for the general regulation of pawnbrokers; and why he had no tickets printed during that period, with the lawful rate of interest upon them, but continued to use the old tickets, with 25 per cent. printed upon them, is in no way explained; or why, when his attention was called to the fact by Mrs. Richards asking, "Do you charge that much for interest?" he made no correction in the voucher, which could easily have been done with a pen, by erasing the words "twenty-five" and inserting "eighteen," but, on the contrary, gave her the voucher to be given to another person—the plaintiff—having upon it the statement that the rate of interest was to be 25 per cent.

Not only was this suspicious, but he was contradicted, not only by the plaintiff and the person who attended her, but by the officer who arrested Mrs. Richards on a charge of larceny, who testified that the defendant told him that a gentleman of the same name as the plaintiff called at his place, pulled out a handful of bills, and he thought they were going to take the article out, whereas the defendant

testified positively that no money was produced. When asked if he did not know that there had been a change in the pawnbroker's law in April, his answers were evasive; first that he heard that there had been some change made, and afterwards that he thought he was still under the old ordinance. On the ticket there is a charge of $2 for the safe keeping of the article, which, he says, Mrs. Richards agreed to. The only safe keeping, it would seem, as it was fur, was to put camphor in it, to preserve it from moths; and yet the ticket expressly provides that he is not accountable for damage by fire, water, robbery, breakage or moths. If he is to have the benefit of this exemption, it is difficult to understand why he should make a charge for safe keeping unless to get a greater amount than the law allows him upon such loans.

He is corroborated by the woman who pawned the dolman; but she, it appears, was arrested and brought before the police court, charged with larceny, apparently in connection with the article; and on the instruction of the magistrate, the ticket she obtained was given to the plaintiff, so that her position in the matter appeared somewhat ambiguous.

I think, therefore, that the ends of justice will be served by reversing the judgment and ordering a new trial, the transaction on the part of the defendant being so strongly suspicious.

LARREMORE and BEACH, JJ., concurred.

Judgment reversed and new trial ordered.