Dwight, J.
The action was to recover the’balance of the contract of several hundred gross of glass bottles sold and delivered to the defendant under an oral contract by which the goods were to be delivered on board the cars at Glassboro, íí. J., and the price was payable on delivery; also a balance of the contract price of several thousand gross of bottles manufactured and shipped by the plaintiffs to the defendant under a written contract by which the plaintiffs agreed to manufacture and deliver 5,000 gross of bottles according to a sample and description, in quantities as called for by the defendant, within one year from August 25, 1883,—for which the defendant agreed to pay within 60 days from the delivery of each shipment, or (at the option of the defendant) within 10 days after such delivery, in which case the defendant was to be allowed a discount of 2 per cent. The answer admitted both the contracts, with the qualification, in respect to the first, that it included a stipulation for the repacking of the bottles in a particular manner; and denied that either of the contracts had been performed by the plaintiff, and denied that the defendant was indebted to the plaintiff in any amount. It also contained appropriate averments for the recoupment of damages for breakage, resulting from the failure of the plaintiffs to repack and properly place on board the cars the bottles purchased under the first contract; and also for the breakage of same; and for imperfection in weight and color of others of the bottles manufactured and delivered under the second contract. The questions presented by these defenses are mainly questions of fact, and have been passed upon by the referee on evidence which seems to us to support his several findings in respect thereto. The bottles sold under the first contract were seen and examined by the president of the defendant at the time the sale was made to hiig, and the manner in which they were packed in trays was plainly to be seen. We think the finding of the referee was sustained by the evidence, to the effect that the packing of these bottles was in conformity with the contract, and that they were properly stowed in the cars at the place of shipment, so that the risk of breakage in transportation was the defendant’s.
Much the largest part of the evidence in the case relates to the defenses sought to be established to tne claim of the plaintiffs to recover for the bottles *440 which were shipped to the defendant under the written contract for the manufacture and sale of the 5,000 gross. These defenses were, in effect, that, of the few hundred gross of bottles actually received by the defendant under the second contract, a portion were broken, and a portion did not conform in weight or color to the sample and description mentioned in the contract; that the great bulk of the 5,000 gross of bottles had never been delivered; and that the refusal of the defendant to accept the delivery attempted to be made of nearly 4,000 gross of those bottles was justified by the fact that they were not shipped in time, and that a portion of them did not conform to the contract in the respects above mentioned. The facts relating to these questions found by the referee, and, as we think, established by the evidence, are briefly as follows: The defendant ordered, during the year mentioned in the contract, less than 500 gross of the bottles, in separate orders, which were promptly shipped as ordered, and for.which partial payments were made. Complaint was made by the defendant that some of these bottles were broken, and that some did not conform to the contract, and, with the consent of the plaintiffs, the defendant returned to them all the bottles rejected, and the price of such rejected bottles was credited to the defendant. All the bottles manufactured under the. second (written) contract had the name of the Hop Bitters Company blown in the glass, and were consequently unsalable to anybody else. The last of the orders above mentioned was given by the defendant, August 6, 1884. On the 26th of August, the day after the expiration of the year mentioned in the contract, the plaintiffs wrote the defendant as follows: “The remainder of the bottles manufactured for you under contract of August 25, 1883, are now ready, awaiting your orders for shipment. If an order is received from you before August 30th, we will ship; if not so received, we will store, at your risk, and charge all expenses to you. After August 30th, any /bottles shipped to you we will deliver f. o. b.; freight and all risks of road must be borne by you. ” To this communication they received answer by telegraph, in the evening of August 28th, as follows: “You may deliver remain<der of bottles here on or before August 30, 1884,-on terms of contract of August 25,1883.” The plaintiffs at once set about procuring the necessary cars {of which 27 were required) for the transportation of the bottles on hand, amounting to nearly 4,000 gross; and on August 30th completed the shipment, consigned to the defendant at Rochester, H. Y. On the 2d day of September, before any,of the bottles had arrived at Rochester, the defendant telegraphed the plaintiffs as follows: “We will receive no bottles from you delivered here after August 30, 1884, not inspected here at your expense, and perfect, and in such quantities as we hereafter order,” to which the plaintiffs answered: “Bottles shipped on receipt of your message of the 28th, and now in transit. We cannot agree to conditions in message of 2d. See contract,” On receipt of this message, and before the arrival of any of the bottles at Rochester, the defendant wrote the Hew York Central freight agent at that place: “If any cars of bottles come to you from Whitney Bros, or others, marked or billed to us, you will not do anything with them for us, or in our name, or presume that we have anything to do with them whatever.” This direction seems to have been communicated by the officials of the Hew York Central road to those of a connecting line over which the bottles were being transported, and an inquiry on the part of the latter as to why-the bottles were ref used was answered by the defendant on September 11th: “The bottles are not according to contract.” The president of the defendant had, after giving the direction for the refusal of the entire shipment, examined some of the bottles, which, in the mean time, had arrived at the depot of the Hew York Central Railroad at Rochester. The last of them arrived on the 18th of September. The whole shipment was at first unloaded and stored in the railroad freight depot, but they were afterwards removed by the railroad company to a warehouse in the city, where they remained stored at the time *441 of the trial; the defendant having refused to receive any part of them. They were then liable to be sold for charges, and, whenever sold, were likely to fall into the hands of the defendant at a low price, because of little or no value to •anybody else.
The referee finds that the bottles so shipped by the plaintiffs were in substantial compliance with the contract under which they were made, being as nearly of the uniform weight and color prescribed by the contract as it was practicable to make them; and that they were well made and shipped, and arrived at Rochester in good condition. We think this finding is warranted by the evidence. The case is quite, full and instructive on the subject of the manufacture of colored glass bottles. We learn that the bottle is blown in an iron mould, the interior conformation of which gives form to the exterior of the bottle. To accomplish this purpose a small quantity of the material of the glass, fused at a great heat, is gathered from the crucible or smelting pot on the end of the blow-pipe. The quantum of fused material cannot be weighed, nor can it be measured, except by the eye of the operator. The bulb of melted glass on the end of the blow-pipe, when its temperature is properly reduced, is inserted within the mould, and, by force of air blown from the lungs of the workman, is expanded until it fills the mould in all its parts. Necessarily, the bottles produced are of the same size externally, but the greater their weight the less their capacity; and their weight is determined by the amount of fused material gathered on the blow-pipe. In the nature of things, it is impossible that the weight of bottles so produced should be absolutely uniform; and, naturally, the custom of the manufacturers of this commodity has established a rule which fixes the limit of variation from a uniform weight which is to be allowed. Evidence of such custom was properly received in this case, and the finding that the limit so prescribed was not exceeded in the manufacture of these bottles is well supported. We learn, also, that it is ■equally impossible to obtain an absolutely uniform shade of color in a large quantity of bottles; that, with the same quantity and proportion of materials ■employed, the color will be affected by the degree of heat to which those materials are subjected; and that the degree of heat will be affected by such un- ■ controllable influences as the condition of the atmosphere and the force and ■direction of the wind. We have little hesitation in assenting to the conclusion ■of the referee that, in respect to both color and weight, the bottles in question •conformed to the contract as nearly as was practicable under the necessary con■ditions of their manufacture.
The facts found by the referee constitute a complete delivery of the large ■shipment of bottles. They were shipped as soon as possible after the receipt •of the order of August 28th; and, if any unusual delay occurred in their transportation to Rochester, it would seem to have been due to the interference of the defendant in the attempt to prevent their delivery. The fact that this shipment did not complete the quantity of bottles contracted for is no defense to this action. An elaborate argument is made on the part of the defendant in support of the proposition that “the contract was entire, and called for entire performance; and that until such was made or tendered there was no liability on the part of the defendant. ” The proposition is quoted from the opinion of the court in the case of Catlin v. Tobias, 26 N. Y. 217; and that case, ■and the cases of Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. Rep. 12, and Champlin v. Rowley, 13 Wend. 258, 18 Wend. 187, are relied upon as sustaining the application of the doctrine to this ease. We find the case strongly distinguished from the cases cited, and from any other ease to which our attention has been called, in which the doctrine of. an entire contract has been applied. Aside from the fact that this was a contract for the manufacture of goods, and not for their sale merely, upon which stress is laid by counsel for respondents, we find in the particular terms of the contract ample grounds for •distinguishing this from the cases referred to. In Norrington v. Wright, *442 supra, the contract was for the sale of 5,000 tons of rails, and the contract: itself specified the time and the amount of each shipment, viz., about 1,000-tons each month, beginning in February, and all to be shipped before August.. The court say they are of “the opinion that the plaintiff’s failure to make such, shipments in February and March as the contract required prevents his maintaining this action.” So, also, in Catlin v. Tobias, supra, the contract expressly prescribed the time within which all the goods should be delivered, viz., within three months from the date of the contract; and in Champlin v.. Rowley, supra, the court held, on the terms of the contract, that the delivery of the entire quantity of the hay sold was a condition precedent to the payment of the price. In this case, on theotherhand, thegoods were, by the terms, of the contract, to be delivered only as ordered by the defendant. The language of the stipulation is: “Tobe delivered in Rochester, N. Y., in car-loads, free of all freight, to us, and when we direct, and within one year from this-date. ” This is plainly a contract for the delivery of goods by installments, the time and quantity of each delivery to be -determined by the order to be given-by the defendant. The addition of the words, “and within one year from this, date,” did not give the plaintiff the right to deliver thegoods faster than they were called for; but must rather be considered as a stipulation on the part of the defendant to call for all the goods within the year. This contract the-plaintiffs have fully performed. They delivered all the goods that were called for, and as they were called for, within the year; and at the close of the year, having received no further orders, notified the defendant that the remainder-of the goods manufactured were held subject to its orders; that they would, ship all goods ordered before August 30th, but, if not ordered before that date, they would be stored at the defendant’s risk and charges. The order which-the defendant gave in response to this notification was impossible of execution, according to its terms. It was probably intended as a snare. Fío part-of the-goods could have been shipped after the receipt of that order, on the evening of the 28th of August, so as to have reached Rochester on the 30th. The plaintiffs, however, proceeded to comply with the order as nearly as possible, and shipped nearly 4,000 gross of bottles on the 29th and 30th. It was after that shipment, and before any portion of thegoods had reached their destination, that the plaintiffs received the final communication from the defendant, to the effect that it would receive no goods delivered in Rochester after August 30th, except in such quantities as should be ordered after that time. If nothing had occurred before the receipt of this dispatch to indicate the determination of the defendant not to accept performance of the contract by the plaintiffs, this would have been quite sufficient to absolve the latter from any further attempt to perform or tender of performance. FTo further order for-bottles was ever given by the defendant. Upon this case we cannot doubt: the correctness of the findings of the referee, which in effect credit the plaintiffs with a substantial performance of the contract on their part, so far as they were required or permitted to perform it.
The objection on the part of the defendant that a portion of the bottles shipped by the plaintiffs were not manufactured in their own works, but in those of another firm, at Bridgton, FT. J., we do not .consider of importance. This contract was manifestly not one which was to be performed by theplaintiffs in person, nor, necessarily, under their personal supervision. The production required the labor of a great number of men, presumably under thedireetiun of foremen and superintendents; and whether in their own factory,, or in one especially employed by them to do the work, would seem not to be-.of the essence of the contract. The bottles in question were manufactured, for the plaintiffs, expressly for this contract, in moulds furnished by them, and: under the inspection of one of the managers of their business. There was no-evidence or offer to show that those bottles did not fully answer the require» ments of the defendant’s contract.
*443 We think there was no error in the rulings o£ the referee on questions o£ evidence which vitiate the judgment. The objection principally urged was that to the admission of evideneeof the custom of the tradein respect to variation in the color and weight of bottles. As we have already intimated, we think this evidence was properly received. It did not tend to contradict or vary the contract, but to define what may be regarded as technical terms employed therein. The proof shows that the terms, “amber colored bottles,” “to weigh twenty-two ounces, and of uniform weight and color,” as used in this contract, are not to be understood in the strict sense of the words themselves; for, if they were so construed, the contract would be impossible of performance. They are to be understood in the particular sense in which they were used in the trade, a product of which is the subject of the contract; and that evidence of usage is admissible to explain words used in such particular sense is well established. Collender v. Dinsmore, 55 N. Y. 200; Walls v. Bailey, 49 N. Y. 470, quoting Boorman v. Jenkins, 12 Wend. 566; Hinton v. Books, 5 Hill, 437. There are no other rulings in the case which seem to require discussion. We are of opinion that the judgment is right, and should be affirmed. All concur.