STICH et al. v. SAMEK.

(Supreme Court, Appellate Term, First Department. February 26, 1897.)

PAWNBROKERS—USURY—COLLATERAL CONTRACT.

A contract by which a pawnbroker to whom a coat is pledged for $4, at the maximum legal interest, receives 12 cents in addition to the interest for insuring it against damage by moths and dust, is valid, if made in good faith.

Appeal from Fifth district court.

Action by John Stich and another against Jacob Samek. From a judgment entered on a decision of the trial justice in favor of plaintiffs, defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

John M. Daily, for appellant.

Brainard Tolles and Daniel J. Early, for respondents.

DALY, P. J. The question argued upon this appeal is the right of a pawnbroker to recover from the pledgor of a coat, in addition to lawful interest, a sum of money which it was agreed at the time of the pledge should be paid for insuring the garment against injury from moths, and restoring it in the same condition as received. The pledgor, on redeeming the coat, refused to pay the additional sum, or premium, and the pawnbroker had judgment for it in this action. The recovery is questioned on the ground that the agreement for such payment is without consideration, because the pawnbroker was bound, in any event, to return the property in the condition he received it, and to protect it against moths, and because the agreement is a cover for usury, or the exaction of a sum in addition to lawful interest. The ticket issued by the pawnbroker contained a charge "for taking extra care as agreed"; and a somewhat similar agreement was discussed in a case in the common pleas (Roosevelt v. Dreyer, 12 Daly, 370), and there was no suggestion that the agreement might not be valid if founded upon a good consideration. The charge in that case was two dollars for the safe-keeping of a fur garment, which, the court said, could only be safely kept by putting camphor in it, to preserve it from moths, but, as the ticket expressly provided that the pawnbroker was not accountable for damage by fire, water, robbery, breakage or moths, it was difficult to understand why he

should make a charge for safe-keeping unless to get a greater amount than the law allowed him upon such loans. In the present case the pawnbroker's ticket did not contain such exemptions from accountability, the exempting clause having been obliterated when the ticket was made out and delivered, and so the objection to recovery upon the ground stated in the case cited is obviated.

The ordinary obligation of a pawnbroker, as of other pledgees, is to exercise the degree of care that an ordinarily prudent man would usually bestow on property of a like nature under similar circumstances; and he is liable to the pledgor for loss or injury resulting from failure to use such care. 18 Am. & Eng. Enc. Law, 659. Such care, in the case of a garment which may be attacked by moths, requires some precaution to prevent injury from that source. The plaintiff admits that this is a danger to be guarded against, although he is mistaken as to the rule with respect to the degree of care to be exercised in ordinary cases, which he says is "to pay ordinary and usual attention to keep them clean and free from moths." But this is not the degree of care prescribed by the rule above stated, and his description of what he ordinarily does illustrates the misconception of duty, for he states that, in ordinary cases, the rule is to bundle up the goods, and take ordinary care of them; that a coat is wrapped up in paper in a bundle, and labeled, and put on the shelf, and stays there until the people call for it. There can be no question that an ordinarily prudent man would take other precautions to preserve a garment liable to be attacked by moths. But, although the pawnbroker is required to exercise the degree of care stated in the rule, that obligation falls far short of the liability of an insurer; for the former is liable only for negligence, but the latter is liable, in any event, if the garment is not returned in the condition in which it is received. For such insurance, therefore, a pledgee may contract to receive what would be in the nature of a premium, and that seems to have been the agreement in this case. The pledgor was informed by him that the coat would be put away in a box with tar paper around it, and taken care of; that from time to time it would be taken out, and brushed; that it would be put in a special room, opened four or five times a year, and brushed and recamphored; and, in case it was affected by moths, the plaintiff would pay for the coat as an insurer of it; and that it would be restored in the same condition as given; and that he would also keep it free from dust, and prevent its getting wrinkled or creased. The charge of 12 cents, made in this case, for nearly nine months' care of a coat pawned for $4, cannot be considered as so excessive as to admit of an inference that it was not intended for the risk insured against, or that it was a cover for usury. Upon the evidence, the justice might reasonably find that the extra charge was intended in good faith, as a payment for insuring the coat from injury, and returning it in the same condition in which it was pledged; and upon that ground the judgment ought to be affirmed.

Judgment affirmed, with costs. All concur.